DRS. RUSSI, GRIFFIN AND
SNELL, LTD.

v.

David MATTHEWS, Secretary, HEW,
et al.

Civ. A. No. 76–0554–R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 18, 1977.

J. Raymond Munholland, Philadelphia, Pa., J. Patrick Keith, Richmond, Va., for plaintiff.

Eliot Norman, Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

### I

Plaintiffs bring this action seeking judicial review of an agency decision within the Department of Health, Education and Welfare (HEW). The Secretary found that plaintiffs had received overpayments under Title 18 of the Social Security Act, Part (B), 42 U.S.C. § 1395 *et seq.* during the years 1971 through 1974.

On 27 January 1977 the government filed a motion to dismiss and an accompanying memorandum in support thereof on the ground that this Court had no jurisdiction over the subject matter of the case. On 17 February 1977 the government filed an additional motion which, in effect, requested that the Court consider the previously filed motion as one for summary judgment pursuant to Rule 56. An affidavit of one Stanley Katz, Director of the Division of Technical Policy of the Bureau of Health Insurance of the Social Security Administration, was filed with the summary judgment motion.

On 28 February 1977 plaintiffs filed a brief in response to the government's Rule 12(b)(6) motion containing a "counterstatement" of facts. Since the counterstatement was not attested to as required by Rule 56 it fails to oppose Mr. Katz's affidavit. Hence, insofar as the affidavit states factual allegations, as distinguished from opinions and conclusions of law, we shall accept those facts as true. Even accepting the counterstatement as true, we find no substantial issue of material fact in dispute, but rather differences in the perception of the legal significance of the facts on which all parties are in essential agreement. We thus opine that this cause is properly before us on motion for summary judgment and we shall dispose of it accordingly, referencing the pleadings, the affidavit and the exhibits.

## II

In 1965, Congress enacted Title XVIII of the Social Security Act, popularly known as "Medicare." 42 U.S.C. § 1395 et seq. This legislation, which provides federal reimbursement of medical care to the aged and to certain disabled persons under age 65, consists of two distinct components. Part A provides hospital insurance benefits while Part B, the program involved in the instant litigation, provides supplementary medical insurance benefits largely for physicians' services. 42 U.S.C. §§ 1395j–1395w. Part A, or hospital insurance is funded out of Social Security taxes and beneficiaries are generally entitled to Part A coverage upon eligibility for general monthly social security benefits. Coverage under Part A basically includes services rendered by hospitals, skilled nursing facilities and home health agencies.

Part B coverage, open on a voluntary basis to those eligible for Part A benefits, is available upon payment of monthly premiums the amount of which is determined by the Secretary of HEW. 42 U.S.C. § 1395r(b) and (c). These premiums, along with contributions from the federal government, go into the Federal Supplementary Medical Insurance Trust Fund, 42 U.S.C. § 1395t, to pay for the benefits provided by Part B. Coverage includes physicians' services and various other medical and health services generally not covered by Part A.

The Secretary is authorized to act through intermediaries called "carriers" for the administration of Part B. 42 U.S.C. § 1395u. These private entities perform a variety of functions as agents of HEW, such as determining the rates and amount of payments and making the actual payments. Beneficiaries are reimbursed, or doctors providing the services are paid, on the basis of the amounts charged by physicians, subject to the carrier's responsibility to establish appropriate reasonable charges pursuant to 20 C.F.R. § 405.501 et seq. When a physician's Part B charges are intermixed with a hospital's Part A charges the federal regulations allow a physician to use either of two methods for computing his Part B charges for services to a beneficiary. 20 C.F.R. § 405.483 allows for computation of the physician's professional component percentage on an item by item basis. An optional method permitted by the same regulation is the use of a uniform percentage of medical services rendered a beneficiary attributable to Part B physician's services. The problem most often arises, of course, with hospital staff physicians.

42 U.S.C. § 1395u(b)(3)(C) and 20 C.F.R. § 405.801(a) together provide that a carrier must establish and maintain procedures pursuant to which an individual having a claim under Part B, be he beneficiary or physician, will be granted an opportunity for a fair hearing by the carrier in any case where the amount in controversy is $100 or more. These procedures are to be utilized when the amounts to be paid are denied, or are not acted upon with reasonable promptness, and when the amount of such payment in controversy is $100 or more.

## III

Drs. Simon Russi, Harvey L. Griffin and Henry M. Snell are pathologists practicing at Petersburg General Hospital in Petersburg, Virginia, as hospital staff or "provider-based" physicians. The hospital is owned and operated by the Hospital Authority of the City of Petersburg.

On 1 February 1970 these pathologists and the hospital entered into an agreement whereby the hospital would provide laboratory facilities and technicians, and the pathologists would provide professional services in order to provide pathology services to in-patients and emergency room patients of the hospital. The agreement further allowed the pathologists to use the hospital's laboratory facilities for their private practice of pathology for out-patients and for their other non-hospital patients. The agreement provided that the hospital would, as a hospital charge, bill the patients for the pathologists' services rendered to in-patients and emergency room patients and pay the pathologists a percentage of the adjusted gross income so derived. At

the same time it was agreed that on a similar percentage basis the pathologists would bill the carrier direct for professional services rendered to those patients who were entitled to Medicare benefits.

Based on these agreements plaintiffs submitted bills for Part B services rendered Medicare beneficiaries for the period from 8 December 1971 until 31 December 1974 to Travelers Insurance Co. (Travelers was the Part B carrier during this time period). These bills were based on 25% of the hospital pathology charges using the optional uniform percentage method. This percentage was derived from plaintiffs' determination of the allocation of medical service costs which properly could be reimbursed by the Part B Medicare Program.

The bills as submitted were paid. However, in October 1975 Travelers, pursuant to its responsibility under 20 C.F.R. § 405.501 *et seq.*, informed plaintiffs that their Part B billing percentage was too high. Travelers further informed plaintiffs of the lower percentage which Travelers considered proper. The overpayment dispute did not concern the eligibility of patients for Part B benefits; it was merely a question about the amount of the claim. Plaintiffs were notified that because their bills reflected a percentage that was too high, they had received Part B overpayments during this entire period in the amount of $36,789.79.

Plaintiffs demanded and were granted an administrative review of the determination of overpayment in accordance with Part B Medicare review procedures. See 42 U.S.C. § 1395u(b)(3)(c); 20 C.F.R. § 405.701 *et seq.* At plaintiffs' request a "Fair Hearing" was held by a hearing officer on 29 June 1976. Plaintiffs were notified of the hearing officers' decision on 29 September 1976. The hearing officer determined that there had been an overpayment to plaintiffs but modified slightly the percentages which the carrier had determined as the proper rate of reimbursement. Plaintiffs' request for a reconsideration of the decision was denied on 12 November 1976. Plaintiffs thereupon filed their complaint in this Court seeking to review the decision of the hearing officer.

IV

The claims alleged by plaintiffs before this Court are as follows:

1. The decision of the hearing officer constitutes a final decision under 42 U.S.C. § 402(g). Such a decision is subject to judicial review in this Court and must be reversed if the administrative record does not contain substantial evidence to support the decision. The decision was not supported by substantial evidence.

2. Alternatively, the decision constitutes an agency action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704, and as such is subject to the judicial review in this Court on the grounds that the decision:

a. Was not supported by substantial evidence as required by 5 U.S.C. § 556;

b. Did not comply with the procedural requirements of the Administrative Procedure Act, 5 U.S.C. §§ 556, 557; and

c. Did not accord with the Medicare statutes and applicable regulations.

3. Regardless of whether or not the Court finds the procedure to be improper for any of the foregoing reasons, said procedure violated plaintiffs' rights of Due Process and Equal Protection.

The jurisdictional statutes relied upon by plaintiffs are 28 U.S.C. § 2201; 28 U.S.C. § 1331, 42 U.S.C. § 405(g); 5 U.S.C. §§ 701 *et seq.*

V

The government's motion for summary judgment alleges that insofar as the statutory and regulatory based claims are concerned, this Court is without subject matter jurisdiction on the grounds that:

1. The Social Security Act precludes judicial review of the claim and;

2. The Administrative Procedure Act does not provide an alternative judicial basis for review of this claim.

Although not clear from the pleadings, the Court finds that the government, in as

much as it argues the merits only, admits to subject matter jurisdiction with regard to the constitutional claims but urges, based upon the unrefuted facts before the Court, that the claims are without merit as a matter of law.

### VI

Plaintiffs do not argue and in effect concede the correctness of the government's contention that the Social Security Act does not provide for judicial review of administrative determinations concerning the appropriate amount of payment under Part B claims. The government's view, which we adopt, is as follows:

> In *Weinberger v. Salfi*, 422 U.S. 749, [95 S.Ct. 2457, 45 L.Ed.2d 522] (1975), the Supreme Court held that § 205(h) of the Social Security Act, 42 U.S.C. § 405(h), precludes judicial review except as prescribed by the Act itself . . . . The *Salfi* decision not only holds that § 405(h) precludes judicial review under 28 U.S.C. § 1331, but also that it prevents review or any decision of the Secretary except as provided in the Act, *i. e.* through § 205(g) above.
> Although *Salfi* relates specifically to claims under Title II of the Social Security Act, it is controlling as to Title XVIII claims as well by virtue of Section 1872 of the Act, 42 U.S.C. § 1395ii, which provides:
>
>> The provisions of sections 206 and 216(j) and of subsections (a), (d), (c), (f), (h), (i), (j), (k), and (*l*) of section 205, shall also apply with respect to this title to the same extent as they are applicable with respect to title II.
>
> Section 205(h) is applicable to all Title XVIII claims. Therefore, all Title XVIII claims may be reviewed only as provided in the Act. On the other hand, § 205(g) which provides for judicial review, is not made applicable to all of Title XVIII. Therefore, judicial review for Title XVIII, pursuant to the procedures established in § 205(g), exists only for certain types of Medicare claims as provided in Title XVIII itself, not for all claims brought under this title. There is no provision in the Social Security Act for judicial review of this claim, the *amount* of benefits which may be properly paid under Part B. Given the *Salfi* Court's reading of section 205(g) as a blanket preclusion of review for causes of action arising under the Social Security Act except as provided in the Act, defendants submit that this court is without subject matter jurisdiction. ·

Plaintiffs claim, rather, that since the "legal nexus" between physician and patient required for a Part B claim is absent, the dispute in actuality is a Part A dispute. Judicial review for Part A disputes is specifically provided for under the Social Security Act. 42 U.S.C. § 1395oo. More specifically, plaintiffs argue that the direct physician-patient relationship customary to private practice with in-patients and emergency room patients of the hospital was not established as between plaintiffs and the Medicare patients. Plaintiffs did not request or accept assignments of Medicare benefit claims from any in-patients for whom pathology services were performed.

■ This Court must hold that the existence or non-existence of a legal nexus does not bear on whether or not a claim is categorized as a Part A or a Part B claim. Part B provides for reimbursement to qualified patients, or payment to the treating physician on assignment, for services in which a physician is personally involved and which are rendered to an individual patient for the direct care of that patient. See 42 U.S.C. § 1395j. This is all that the statute requires to establish a Part B claim.

■ With respect to Part B claims all concur that patients are entitled to administrative, but not judicial, review of Part B disputes concerning the amount of reimbursement. 42 U.S.C. § 1395u(b)(3)(C). Physicians who hold assignments for Part B benefits are likewise entitled to administrative but not judicial review. 20 C.F.R. § 405.801(a).

Neither the Social Security Act nor the Regulations speak directly to the nature of

the physician's right of review of disputes over the amount of Part B reimbursements under the arrangement herein where a physician elects the optional uniform method of billing pursuant to 20 C.F.R. § 405.483. Whether or not this method constitutes an "assignment" within the meaning of 20 C.F.R. § 405.801(a) is not specifically answered. Common sense would dictate that it does, particularly in view of the fact that the treating physicians, not the hospital, are submitting the bills to the Part B carrier.

In any event, a treating physician's right with regard to payment cannot rise any higher than that of the Medicare patient regardless of whether there is an individual assignment of each qualified patient's right of reimbursement to the treating physician. Plaintiffs were asserting claims against the Part B fund, not the Part A fund. By the statute's very language, plaintiffs have no independent right to Part B funds. 42 U.S.C. §§ 1395j, 1395u. Their rights to the fund are derived wholly from the patients' rights. If we accept plaintiffs' apparent argument that their rights to Part B funds are not derived from the rights of the qualified patients treated, then we must conclude that plaintiffs are not entitled to any payment whatsoever.

In sum, no logical reason has been advanced to support the position that plaintiffs should have Part A rights of review concerning disputes over payments out of Part B funds when the primary beneficiaries of Part B funds are themselves without such rights. Since plaintiffs cite no other jurisdictional bases for review of this cause under the Social Security Act we conclude that the Court's jurisdiction is not properly invoked thereunder in this case.

### VII

■ The Court further finds that the Administrative Procedure Act does not invoke the jurisdiction of this Court. 5 U.S.C. § 701(a)(1). *See also, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *Sanders, supra,* cited in the government's rebut-

tal brief, appears to be itself dispositive of the issue. In that case the Supreme Court stated without qualification that "the A.P.A. is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions" 430 U.S. at 105, 97 S.Ct. at 984, 51 L.Ed.2d at 199. Plaintiffs point out that the facts in the *Sanders* case are substantially different than those in the instant case, most significantly plaintiff in *Sanders* had an opportunity for judicial review that he let lapse while in this case no such opportunity ever existed. We observe that the facts are indeed different but we find no evidence in *Sanders* that its ruling with regard to the A.P.A. was predicated on the aforementioned distinction or was otherwise limited to the particular facts of that case. We thus find that the A.P.A., read in light of *Sanders,* does not invoke the jurisdiction of this Court in the instant case.

### VIII

The Court accepts for purposes of this case, and apparently the government does not contest, that 28 U.S.C. § 1331 invokes the jurisdiction of this Court with regard to the constitutional allegations of denial of Due Process and Equal Protection.

### IX

■ The Due Process allegation as stated in plaintiffs' brief is as follows:

Plaintiff asserts a violation of the due process guarantees of the United States Constitution by reason of the review proceeding wherein Blue Cross recalculated the inpatient billing rates *ex parte* and did not participate in the administrative review afforded plaintiffs.

Travelers Insurance Co., rather than Blue Cross was responsible for recalculation as well as payment of the Part B claims. Travelers nevertheless based its recalculation on payment rates provided by Blue Cross (the Part A Carrier for Petersburg General Hospital) which in turn based its rates on statistical data provided by the Petersburg General Hospital and plaintiffs. We attach no legal significance to whatever

reliance Travelers placed upon Blue Cross in the recalculation of payment ratios to plaintiffs. Nor do we attach any legal significance to the charge that Blue Cross did not participate in the administrative review afforded plaintiffs. Travelers, as the Part B carrier, was the party under the law responsible for the Part B payments and Travelers was accordingly the proper party to represent the government's interest in this matter. Affidavit of Stanley Katz at p. 2, paragraph 5. Besides, plaintiffs fail to state in what way, if any, non-participation of Blue Cross was prejudicial to their interests at the hearing.

Plaintiffs fail to give any reason or cite any authority supporting the proposition that Travelers' *ex parte* adjustment of the payment ratio submitted by plaintiffs violated their Due Process rights. Plaintiffs in accordance with the law had a full hearing before a hearing officer by whom a decision was rendered upholding, with slight modification, the in-patient billing rate set by Travelers. Affidavit of Stanley Katz at p. 4. This hearing is the exclusive formal administrative remedy for Part B claims as to amount of payments and, to reiterate, there is no provision for judicial review.

Plaintiffs do not allege any procedural inadequacies or irregularities at the hearing other than non-participation by Blue Cross which we have already discussed. Hence, there being no allegations to the contrary, we must presume that the hearing fully complied with the requirements of Due Process. Had the adjustment not been subject to administrative review or had it resulted in irreparable harm prior to administrative review then perhaps a plausible Due Process argument could be advanced. But plaintiffs had a full and fair hearing resulting in a decision that they had been overpaid. Before this Court plaintiffs seek declaratory relief only.

For these and the foregoing reasons we find that plaintiffs' Due Process claim, as a matter of law, is unfounded.

X

What plaintiffs purport to be an Equal Protection argument is stated in plaintiffs' Brief as follows:

In its annual Cost Report, the Petersburg General Hospital deducts a cost of operation which is that portion of the compensation paid to plaintiffs which is attributable to compensation for the general, administrative and otherwise direct patient care services of the pathologist employees of plaintiff. The HEW regulations defining what is compensation for this purpose describe the same factors and the same criteria to be considered that would be considered in calculating the uniform inpatient billing rate for the plaintiff. The hospital if it should dispute any determination of compensation with regard to its cost report, can evoke the Part A review process . . . [which includes judicial review]. Plaintiff contends that there is no rational distinction for its abbreviated review process, and thus that it is deprived of equal protection guarantees of the United States Constitution.

■ To begin with, this suit is against HEW, a department of the federal government, and against Blue Cross of Virginia and Travelers Insurance Co. in their capacities as agents of the federal government, thus the Equal Protection guarantees of the Fourteenth Amendment are inapplicable. Those guarantees protect only against State action. *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Nonetheless we may consider the substance of plaintiffs' argument under the Due Process clause of the Fifth Amendment:

The Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth Amendment which applies only to states. But the concepts of equal protection and due process, both stemming from our American idea of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law," and, therefore we do not imply that the two are always interchangeable phrases. But

as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process. [*Bolling v. Sharpe,* 347 U.S. at 499, 74 S.Ct. at 694.]

■ In keeping with this point, *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) states at pp. 81 and 82, 92 S.Ct. at p. 257 that:

A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503. While the present case, involving as it does a federal statute does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. *Cf. Bolling v. Sharpe,* 347 U.S. 497, 499 [74 S.Ct. 693, 694] 98 L.Ed. 884.

To find a rational basis for the classification created by . . . [federal statute] we need go no further than the reasoning of Congress as reflected in the legislative history.

The rational basis reasoned by Congress for the distinction between Part A and Part B review is aptly put forth in the government's Reply Brief at p. 7:

As discussed above, this claim is clearly a Part B Medicare claim. In promulgating the provisions of the Medicare program relating to review of a Part B claim Congress precluded judicial review of questions concerning the amount of benefits which are paid under Part B. (See Section 1869 of the Social Security Act, and Part I of Defendants original brief.)

Examination of the legislative history surrounding the passage of Title XVIII indicates that Congress had a rational basis for precluding judicial review of such Part B claims. The Senate Committee on Finance, S.Rep.No.404, Part I, 89th Cong., 1st Sess. 54–55 (1965) stated in part "the bill does not provide for judicial review of determinations concerning the amount of benefits under Part B where claims will probably be for substantially smaller amounts than under Part A." In 1972 Senator Bennett of the Senate Finance Committee, when explaining why a person could not appeal a Part B amount claim to Federal court stated "If he [the claimant] did we would never have an end to it." 118 Congressional Record 33992 (Oct. 5, 1972). Thus, it is clear that Congress, envisioning a vast number of relatively small claims potentially engulfing the Federal judicial system, had a rational basis for precluding judicial review of these Part B claims.

Although the amount in controversy herein is likely more substantial than that contemplated by Congress, this fact is of no constitutional consequence: "it is of course constitutionally irrelevant whether this reasoning in fact underlay the legislative decision, as it is irrelevant that the section does not extend to all to whom the postulated rationale might in logic apply." *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).[1] (citations omitted).

The *Nestor* dictum aside, the Part B payments claimed here, though considerable, were indeed "for substantially smaller amounts [one-fourth to be exact] than under Part A" S.Rep.No.404, U.S.Code Cong. & Admin.News 1965, pp. 1943, 1995, *supra.*

---

1. In *Flemming v. Nestor* plaintiff alleged that Section 202(n) of the Social Security Act violated the Due Process clause of the Fifth Amendment because the Act provided for termination of benefits payable to, or in certain cases, in respect of, an alien on the ground of his deportation for Communist Party membership. The Court held, among other things, that the statute did not deprive the alien of the protection from arbitrary governmental action afforded by the due process clause of the Fifth Amendment. In so doing the Court stated that "the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification" *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Part I, 89th Cong. 1st Sess. 54–55 (1965), U.S.Code Cong. & Admin.News 1965, p. 1943.

Hence resolution of the subject claim under Part B procedures, although probably not contemplated by Congress in terms of the large dollar amount, cannot be said to be beyond the realm of congressional intent manifest in the history of the legislation.

Assuming then that we are dealing with a Fifth Amendment Due Process problem in the nature of an Equal Protection violation, it appears to us, as a matter of law, that the government has met the burden of showing that the distinction between the review proceedings for Part A and Part B claims is rational and not arbitrary or capricious. Aside from the relative difference in the respective amounts of Part A and Part B claims contemplated by Congress, there are innumerable other distinctions between these claims any one of which would provide a rational basis for treating them differently—to name but a few: the difference in the coverage provided; the difference in the source of the funds with which to pay the claims; the voluntary nature of Part B coverage; the assignment provisions under Part B; and the like.

Finding that the distinction meets the Due Process/Equal Protection analysis the Court queries whether or not it need have gone that far in this case. The essence of plaintiff's claim is discriminatory treatment and the essence of a discrimination claim is that a class of people who are similarly situated are being treated differently without reason. The discrimination herein is with regard to claims, not with regard to people. All qualified patients submitting Part A or Part B claims are equally entitled to the respective review procedures provided under Part A or Part B. The difference in the nature of review depends upon the claim, not the person or class of persons seeking relief. Of course hospitals and doctors, as the usual assignees of Part A and Part B claims respectively, are treated differently. But it would be stretching the meaning and purpose of Equal Protection law to distortion to say that these two groups, as assignees of Part A and Part B claims, fit within the definition of similarly situated classes that are being treated differently without reason.

The qualified patients, not the hospitals or the doctors, are the primary beneficiaries of these claims. Equal Protection law should not and we believe does not require us to look behind the intended beneficiaries of a law, who are being treated equally, to determine if their assignees are also being treated equally. But even if it did, we have found that the "unequal treatment" complained of herein is rationally based and thus within the bounds of the Constitution.

An appropriate order shall issue.