William McCLURE, Charles Shields, and "Ann Doe," individually and on behalf of a class of persons similarly situated, Plaintiffs,

v.

Patricia Roberts HARRIS, Secretary of the Department of Health, Education and Welfare, and Blue Shield of California, Defendants.

No. C-79-0201 WHO.

United States District Court, N. D. California.

May 19, 1980.

---

410

Harvey Sohnen, Clifford Sweet, Legal Aid Society of Alameda County, Oakland, Cal., Sally Hart Wilson, Neal Dudovitz, Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., Patricia Burgess, Fortuna, Cal., Diane M. Roth, Peter H. Reid, Legal Aid Society of San Mateo County, Redwood City, Cal., for plaintiffs.

G. William Hunter, U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## OPINION

ORRICK, District Judge.

Three named plaintiffs bring this action on behalf of a class of Medicare beneficiaries challenging the constitutionality of the hearing procedures available under Part B of the Medicare program. 42 U.S.C. §§ 1395j–1395w, 1395ff. Defendants are Patricia Roberts Harris, Secretary of Health, Education and Welfare ("HEW"), and Blue Shield of California ("Blue Shield"), a private insurance carrier that administers Part B benefits under contract with HEW.

Plaintiffs claim that the statutory scheme, whereby the final determination of whether, or to what extent, Part B beneficiaries are entitled to claimed benefits is made by hearing officers appointed by private insurance carriers, violates their rights to due process and equal protection of the law and unconstitutionally delegates judicial power to private parties.

Presently before the Court are plaintiffs' motion for class certification and both parties' cross–motions for summary judgment.

For the reasons set forth below, the Court certifies this case as a class action, and grants in part and denies in part the parties' summary judgment motions.

I

The Medicare program, established in Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides health insurance benefits for aged and disabled persons. It consists of two subprograms. Part A covers certain costs of institutional care, such as hospital and nursing home fees. 42 U.S.C. §§ 1395c–1395i–2. Part B covers "supplementary" medical costs such as physicians' services and physical therapy. 42 U.S.C. §§ 1395j–1395w. The programs differ in the manner in which they are funded, the standards of eligibility, the scope of coverage, and the procedures for resolving claims disputes.

After incurring supplementary medical expenses, a Part B beneficiary submits a claim to the private insurance carrier with whom HEW has contracted to administer benefits in that beneficiary's locale.[1] The carrier makes an initial determination whether, and to what extent, the claimed benefits are covered. 42 C.F.R. §§ 405.803–405.806. Any claimant who is dissatisfied with the initial determination may request a "review determination," which involves a *de novo* review of the written record by a carrier employee different than the one who rendered the initial determination. 42 C.F.R. §§ 405.807–405.812. If the amount in controversy is at least $100, a claimant who is dissatisfied with the review determination may request an oral, evidentiary hearing. 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.820–405.835. The hearing officer is appointed by the carrier and may be an employee of the carrier, but he may not hear "any case in which he is prejudiced or partial with respect to any party, or if he has any interest in the matter before him."

---

1. The Medicare statute authorizes the Secretary of HEW to enter into contracts with private insurance carriers to, among other things, determine the rates and amounts of payments under the "reasonable cost" and "reasonable charge" standards established by the statute, receive, disburse, and account for funds in the making of such payments, and conduct audits. 42 U.S.C. § 1395u(a).

42 C.F.R. § 405.824. The hearing officer's decision is final; no further administrative or judicial review has been authorized by Congress or provided by HEW. 42 U.S.C. § 1395ff(b); 42 C.F.R. § 405.835.[2] Only where a dispute concerns a person's eligibility to enroll in the Part B program, rather than his entitlement to particular benefits claimed, may he appeal an adverse decision to the Secretary of HEW and, if the amount in controversy is at least $1,000, to the courts. 42 U.S.C. § 1395ff(b).

Each of the named plaintiffs submitted Part B claims to Blue Shield and was denied benefits, in whole or in part, by the carrier (upon both initial and review determinations) and then by carrier–appointed hearing officers. Plaintiff William McClure was denied partial reimbursement for the cost of an air ambulance which transported him to a hospital specially equipped to treat his myocardial infarction. The hearing officer ruled that although air ambulance services were necessary, McClure could have been taken to a hospital that was closer to his home. Plaintiff Charles Shields was denied reimbursement for part of the cost of an operation that involved both a cholecystectomy and an appendectomy. The disallowed portion of his claim was that attributable to the appendectomy and was denied on the ground that the appendectomy was merely incidental to the cholecystectomy. Plaintiff Ann Doe[3] was denied reimbursement for the full cost of a sex–change operation on the ground that the operation was not medically necessary and therefore not covered by Medicare.[4]

Plaintiffs filed this action not to contest the substantive denial of their claims, but to challenge the procedures by which Part B claims disputes are resolved. They assert four constitutional claims. First, they argue that a hearing officer appointed by the same insurance carrier which has twice denied the claim under review (upon initial and review determinations) is not an impartial tribunal as required by the Due Process Clause of the Fifth Amendment. Second, they contend that the vesting of final decision–making authority in such hearing officers is an unconstitutional delegation of judicial power. Third, they claim that the procedures employed at Part B hearings do not comport with either the Due Process Clause or the Social Security Act because hearing officers are not guided by "fair evidentiary standards" such as the preponderance of the evidence rule. Fourth, plaintiffs allege that their right to equal protection of the law is violated insofar as the hearing procedures available under Part A are superior to those available under Part B of the Medicare program.

This Court has jurisdiction over the plaintiffs' constitutional claims because they are collateral to their substantive claims for Medicare benefits. *Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976). *See also Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). As plaintiffs acknowledge, the Court lacks jurisdiction to review the merits of the decisions denying their benefits claims. 42 U.S.C. § 1395ff.

## II

Plaintiffs seek to litigate these constitutional issues on behalf of a nationwide class of Part B beneficiaries whose claims for benefits have been or will be denied by carrier–appointed hearing officers. Defendants concede that plaintiffs satisfy the threshold requirements for maintaining a class action under Rule 23 of the Federal Rules of Civil Procedure. Nevertheless, they urge the Court to exercise its discretion to deny class certification or to restrict the scope of the proposed class.

---

2. The final decision of a hearing officer is subject to reconsideration and revision by the hearing officer, 42 C.F.R. § 405.841, but it is not appealable to the Secretary of HEW or the courts.

3. On January 11, 1980, at the hearing on the motions which are the subject of this Opinion, the Court granted plaintiff Ann Doe's motion to proceed by a fictitious name.

4. Hospital costs related to the sex change operation were independently allowed under Part A.

■ The Court finds that the proposed class possesses each of the Rule 23(a) prerequisites to a class action. Even if limited, as defendants suggest, geographically to the Northern District of California and temporally to Part B beneficiaries who *will* be denied claimed benefits after hearing, the proposed class is so numerous that joinder is impracticable, there are common questions of law involved, the named plaintiffs' claims are typical of other class members', and the named plaintiffs and their attorneys will fairly and adequately protect the interests of the class. In addition, the Court finds that a class action is properly maintainable under Rule 23(b)(2) because the defendants have uniformly applied the challenged statutory provisions and administrative policies to all class members and the declaratory and mandamus relief being sought would be appropriate with respect to the class as a whole.

Finally, the Court finds that it is not only permissible but also desirable that this action proceed on a class basis. Similar cases are currently pending in at least three other district courts. *Gadsden v. Califano*, No. C–75–2946 ALS (C.D.Cal., filed August 29, 1975); *Monroe v. Califano*, No. C–78–4175 ALS (C.D.Cal., filed Oct. 31, 1978) (consolidated with *Gadsden*); *Leduc v. Califano*, No. C–77–3386–S (D.Mass., filed Nov. 4, 1977); *Salitan v. Califano*, No. C–77–84D (M.D.N.C., filed Feb. 23, 1977). Another, similar case in a fourth district has already been decided. *Davis v. HEW*, 416 F.Supp. 448 (S.D.N.Y.1976). A class action is the most efficient and expeditious means of reaching a final and binding resolution of the constitutional questions surrounding the Part B Medicare program. The class action device is particularly well suited to this situation, where the maintenance of countless individual actions might produce inconsistent demands upon defendants and inequitable results for similarly–situated plaintiffs. Although plaintiffs here would exclude from their proposed class all persons who are plaintiffs in the pending cases listed above, class certification would preclude any further proliferation of such lawsuits.

From this analysis flows the logical conclusion that the class should be nationwide in geographical scope. The statute and hearing procedures under attack apply to all Part B beneficiaries across the country. The antiproliferation aspect of class certification can be meaningfully realized only if the class is nationwide. Moreover, the Supreme Court recently underscored the appropriateness of nationwide classes in actions such as this. *Califano v. Yamasaki*, 442 U.S. 682, 701–703, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176 (1979).

The appropriate temporal scope of the class is somewhat less obvious. Plaintiffs would include all persons who were denied Part B benefits by carrier–appointed hearing officers during the six years prior to the commencement of this suit, as well as all persons who will subsequently be denied Part B benefits after hearing. Defendants vigorously object to extending the class backward in time because a decision in plaintiffs' favor would disrupt settled results and impose substantial costs insofar as past hearings would have to be reopened. The Court finds that the burdens attendant upon resurrecting cases that were closed as long ago as 1973 far outweigh the benefits of doing so. In line with the approach adopted by the Supreme Court and other district courts in cases involving constitutional challenges to the Social Security Act and the Medicare program, the Court will certify a class comprised of persons who have been denied Part B benefits by carrier–appointed hearing officers within one year prior to the filing of this suit and subsequent thereto. *See Califano v. Yamasaki, supra; Wright v. Califano*, No. 77–4101–IH (C.D.Cal., Nov. 28, 1978) (order certifying class action) (Exhibit F attached to plaintiffs' memorandum in support of class certification); *Gray Panthers v. Califano*, No. 77–488 (D.D.C., Nov. 22, 1977) (order certifying class action) (plaintiffs' Exhibit E), 466 F.Supp. 1317 (D.D.C.1979) (summary judgment granted for defendant).

Accordingly, IT IS HEREBY ORDERED that plaintiffs' motion for class certification is GRANTED and that this action shall

proceed as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The class includes all beneficiaries of the Part B Medicare program who, within one year prior to the filing of this lawsuit and subsequent thereto, have been denied claimed benefits by carrier–appointed hearing officers. However, the class shall not include those persons who are named plaintiffs or members of a plaintiff class in any action pending against the Secretary of HEW which raises issues similar to those raised here.

### III

Plaintiffs' strongest claim is that their due process rights are violated by the vesting of final, unreviewable decision–making power in hearing officers appointed by the insurance carrier. This argument, which is a frontal attack upon the statutory scheme, 42 U.S.C. §§ 1395u(b)(3)(C), 1395ff, is two pronged. First, plaintiffs contend that Part B hearing officers are not impartial tribunals in contravention of the Due Process Clause. Second, plaintiffs argue that the unavailability of any independent, administrative review of carrier–appointed hearing officers' decisions represents an unconstitutional delegation of judicial power. Each claim will be analyzed separately, but the Court notes at the outset that the two claims are closely interrelated. If hearing officers are potentially biased in favor of the carriers whose determinations they review, then the availability of an independent, administrative appeal beyond the hearing officer level might well mitigate the harmful effects of such bias. On the other hand, if no independent tribunal is ever to review a hearing officer's decision, then impartiality must be fully ensured at the hearing–officer level.

### A

■ It is well established that in order to satisfy the fair–hearing requirement of the Due Process Clause, a tribunal (whether administrative or judicial) must be impar-

tial. *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1463, 43 L.Ed.2d 712 (1975); *Gibson v. Berryhill*, 411 U.S. 564, 578–579, 93 S.Ct. 1689, 1697–1698, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972). The adjudicator may neither have a pecuniary interest in the outcome nor have been the target of personal abuse or criticism from the party before him. *Withrow v. Larkin, supra*, 421 U.S. at 47, 95 S.Ct. at 1464.

■ With all due respect for the personal integrity of Part B hearing officers, this Court finds that their impartiality is compromised by virtue of both prior involvement and pecuniary interest. With respect to prior involvement, the Court notes that Part B hearing officers do not participate personally, prior to the hearing state, in any case which they adjudicate. 42 C.F.R. § 405.824. However, they have been vicariously involved because they are appointed by, and serve at the will of, the carrier which has not only participated in the prior stages of each case, but has twice denied the claims which are the subject of the hearing. Unlike situations where the standards governing an initial determination differ from those governing the subsequent outcome, Part B hearing officers could only rule in the beneficiaries' favor by directly overturning the carriers' decision. *Cf. Withrow v. Larkin, supra*, 421 U.S. at 57, 95 S.Ct. at 1469. The significance of the hearing officers' prior involvement is underscored by the fact that five out of the seven hearing officers appointed by Blue Shield during the history of the Part B program are former *or current* Blue Shield employees.[5] That such prior involvement raises the specter of partiality has long been recognized by the Judicial Conference of the United States. Under Canon 3C(1)(b) of the Code of Judicial Conduct, a judge should disqualify himself from adjudicating any case where "a lawyer with whom he previously practiced law served during such association as a lawyer concerning the mat-

---

**5.** Blue Shield's answers to plaintiffs' interrogatories, No. 3, as summarized in plaintiffs' memorandum in support of summary judgment at 8, 10.

ter." Heeding the admonition in Canon 3C to avoid situations where their "impartiality might reasonably be questioned," many judges routinely disqualify themselves from hearing any matters in which their former law office is involved, whether or not the particular matter was pending before the judge left the firm. To apply appreciably more lax standards to hearing officers whose final decisions, unlike those of most judges, are appealable to no other tribunal, poses a constitutionally–unacceptable risk of decisions tainted by bias.

This risk is heightened by the fact that Part B hearing officers have a pecuniary interest in currying the carrier's favor. Although their salaries are paid from a federal fund and not by the carrier, their incomes as hearing officers are entirely dependent upon the carrier's decisions regarding whether, and how often, to call upon their services.

In *Davis v. HEW, supra,* the court stated that "[t]he mere fact that the hearing officer is employed [by] the carrier does not render him constitutionally unacceptable." *Id.* 416 F.Supp. at 452. In this case, however, the record contains several indicia of potential bias beyond the "mere fact" that the carrier appoints the hearing officer. In addition to the factors summarized *supra,*

the record indicates that there are no meaningful, specific selection criteria governing the appointment of hearing officers.[6] Apart from occasional training sessions presented by HEW, attendance at which is voluntary, hearing officers receive their only training from the carrier whose decisions they are called upon to review.[7] Whereas each one of these factors might not, by itself, contravene the constitutional requirement of impartiality, their combined effect is constitutionally impermissible.[8]

B

The second prong of plaintiffs' due process argument is that final decision–making authority may not be vested in carrier–appointed hearing officers. Plaintiffs claim that they are constitutionally entitled to a hearing before the Secretary of HEW either subsequent to or substituting for the hearing conducted by a carrier appointee. This claim must be analyzed under the balancing test set forth in *Mathews v. Eldridge, supra.* In determining what process is due in the circumstances present here, the Court is to consider three factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of

6. *See* Hearing Officers Handbook and Part B Carrier Manual for the extremely general selection criteria provided by HEW. Moreover, it bears note that HEW does not review actual selection decisions to determine whether even these minimal criteria are satisfied. Deposition of Jack C. Byrne, Appendix D to plaintiffs' memorandum in support of summary judgment, at 15–16.

7. HEW's answers to interrogatories, No. 11 (in *Gadsden v. Califano,* No. C–75–2946 ALS) (C.D.Cal., filed August 29, 1975), at 121–122; Byrne deposition, Appendix D, at 18–21.

8. Although *Davis v. HEW,* 416 F.Supp. 448 (S.D.N.Y.1976), is the only other decided case of which this Court is aware that addressed similar challenges to the Part B hearing process, several cases rejected partiality challenges to Provider Review Committees and analogous tribunals under Part A. *See, e. g., St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283, 292–293 (8th Cir. 1976), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976); *Chelsea Community Hospital v. Michi-*

gan *Blue Cross Ass'n,* 436 F.Supp. 1050, 1060–1061 (E.D.Mich.1977); *Community Hospital of Indianapolis, Inc. v. Blue Cross Ass'n,* No. IP–73–C–615 (S.D.Ind.1974) (Defendants' Exhibit C). In those cases, the providers who were challenging the makeup of the hearing tribunal had voluntarily foregone the option of dealing directly with HEW, instead of with the carrier, and thereby entirely avoiding the carrier–appointed tribunal. Part B beneficiaries lack any such option.

In *Gray Panthers v. Califano,* 466 F.Supp. 1317, 1323 n.10 (D.D.C.1979), the court summarily rejected a partiality challenge to carrier–appointed hearing officers. As in *Davis, supra,* n.8, the *Gray Panthers* court apparently lacked the extensive factual record present here. Whereas the *Gray Panthers* footnote refers to but one potential source of bias, the record here establishes numerous such sources which, in combination, cast doubt upon the ability of Part B hearing officers to render final, unappealable decisions which both are, and appear to be, impartial.

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*, 424 U.S. at 335, 96 S.Ct. at 903.

The private interest at stake is the Medicare beneficiary's right to reimbursement for medical expenses covered by Part B of the Medicare program. Without slighting the importance of this right, the Court notes that it is not quite as precious as the right to receive welfare or social security benefits to which one is entitled. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Califano v. Yamasaki, supra.* Eligibility for Part B Medicare benefits is not based on financial need. Part B covers supplementary rather than primary services. Denial of a particular claim in a particular case does not deprive the claimant of reimbursement for other, covered, medical expenses. Nonetheless, it cannot be gainsaid that a Medicare beneficiary's right to reimbursement is sufficiently important to invoke the Due Process Clause, and that denial of that right may impose considerable hardship. *Cf. Gray Panthers v. Califano, supra*, 466 F.Supp. at 1320–1321.

Plaintiffs claim that the procedures currently used pose a high risk of erroneous deprivation of Medicare benefits. The record is inconclusive in this regard. Defendants establish that between 1975 and 1978, carriers wholly or partially reversed, upon "review determination," their initial determinations in 51–57 percent of the cases considered. Of the adverse determination decisions brought before hearing officers, 42–51 percent of the carriers' decisions were reversed in whole or in part.[9] However, defendants fail to indicate the extent or significance of the partial–as compared with total–reversals, or the breakdown between technical and substantive reversals. In light of plaintiffs' undisputed showing that carrier–appointed hearing officers receive little or no formal training and are not required to satisfy any threshold criteria such as having a law degree,[10] it must be assumed that additional safeguards would reduce the risk of erroneous deprivation of Part B benefits.

The government clearly has a strong interest in controlling the costs associated with the Part B Medicare program. However, it is far from clear that the imposition of Part A hearing procedures would entail substantial additional costs. As defendants point out, more than 124 million Part B claims were processed by carriers in 1978.[11] Only a fraction of those claimants pursue their currently–available appeal remedies (*i. e.*, review determinations and hearings). If an appeal to the Secretary is made available, there is no indication that anything but an even smaller group of claimants will actually pursue this additional remedy. Moreover, the cost of providing such additional remedy will be minimized by the fact that the Secretary already maintains an appeal procedure, utilizing administrative law judges, for Part A claimants. To enable Part B claimants to appeal adverse hearing officers' decisions to Part A administrative law judges would not require the creation of a new appeals system or a new bureaucracy. It would simply increase the number of claimants who utilize the existing Part A administrative appeal. That would not be a cost–free change from the status quo, but neither should it be a costly one.

■ Taking into account the three governing factors, the Court concludes that the existing Part B hearing procedure does not comport with due process. An important

---

9. Affidavit of Stanley Katz, ¶ 9, and Attachment B thereto.

10. Plaintiffs' memorandum in support of summary judgment at 6–13 and supporting documentation.

11. Katz affidavit, ¶ 8.

interest is at stake, there is a reasonable likelihood that additional procedures will reduce the risks of erroneous deprivation of benefits, and the costs of providing such procedures are not expected to be great.

This conclusion accords with much of the case law in this area. The only case involving the same challenges to the Part B program as those raised here did not reach the second prong of plaintiffs' due process argument. *Davis v. HEW, supra,* held that it does not offend the Constitution to delegate decision–making authority *to* carrier–appointed hearing officers; it did not resolve whether it is constitutional to deny an administrative appeal *from* the carrier–appointed decision maker. In *St. Louis University v. Blue Cross Hospital Service,* 537 F.2d 283 (8th Cir. 1976), *cert. denied,* 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976), the Eighth Circuit addressed both issues. The Court found no unconstitutional bias, in the Part A context, in using carrier–appointed Provider Appeal Committees to resolve reimbursement disputes. *Id.,* at 292. However, the court also ruled that such committees may not make final, unreviewable determinations of law; the claimant must accept the committee's factual rulings but is entitled to appeal its legal interpretations of the statute and regulations to the Secretary. *Id.* at 292–293. Finally, in *Ass'n of American Physicians & Surgeons v. Weinberger,* 395 F.Supp. 125 (N.D.Ill.1975), the court noted:

> "[I]t has been held permissible for agencies of the federal government to contract with private organizations in order to have such organizations perform governmental functions *as long as the particular administrative scheme provides for a hearing on the determination made by those private organizations."* *Id.,* at 140 (emphasis added).

In the context of Part B reimbursement disputes, the risks of bias and of erroneous deprivation of benefits require the Secretary to make available an administrative review of carrier appointees' decisions. Only by vesting final decision–making authority in an independent tribunal will Part B beneficiaries' due process rights be adequately protected. At least two options are available to the Secretary. Existing Part B procedures might remain intact so long as aggrieved beneficiaries would be entitled to appeal carrier appointees' decisions to Part A administrative law judges. Alternatively, the separate Part B procedures might be terminated and Part B beneficiaries fully included within the existing Part A hearing process. Thus, the carriers' review determinations would be appealable directly to administrative law judges for ultimate resolution.

C

■ Plaintiffs also claim that Part B hearing procedures violate due process because the hearing officers are not bound by the preponderance of the evidence standard of proof and are not required to attribute particular weight to medical evidence. Under existing procedures, hearing officers are directed to base their decisions upon substantial evidence. Hearing Officers Handbook. Plaintiffs seek to require hearing officers to employ the preponderance of the evidence test, which would require a somewhat stronger showing by the prevailing party. However, plaintiffs neither cite decisional authority nor provide convincing argument sufficient to create a constitutional violation out of the discrepancy between the substantial evidence and preponderance of the evidence tests. Neither do plaintiffs demonstrate that it is fundamentally unfair not to require hearing officers to ascribe great weight to medical evidence. Plaintiffs describe in considerable detail the cases presented at their hearings by each of the named plaintiffs and highlight the medical evidence which was necessarily rejected by the hearing officers in the course of denying or reducing their claims. However, the particular decisions are not reviewable by this Court and the administrative record lacks any indication that the absence of evidentiary standards regarding medical testimony deprived plaintiffs of due process.

### D

Plaintiffs next argue that the inferior hearing procedures available to Part B beneficiaries as compared to those available to Part A beneficiaries deny them equal protection of the law. The salient differences between Part A and Part B hearings are: (1) Part A hearings are conducted by administrative law judges while carrier–appointed hearing officers conduct Part B hearings; and (2) Part A claimants may obtain judicial review of an administrative law judge's decision, where the amount in controversy exceeds $1,000, while there is no judicial review available under Part B.

Plaintiffs challenge primarily the first difference–the difference between an administrative law judge and a carrier appointee as a hearing officer. They claim that beneficiaries under both programs are similarly situated because all pay for their coverage (Part A beneficiaries pay through payroll deductions and Part B beneficiaries pay monthly premiums). They also claim that an intermediate level of scrutiny should be applied here because medical care is a basic necessity. They contend that, under the intermediate test, the inferior Part B hearing procedures violate their equal protection rights.

 Plaintiffs' argument rests upon two incorrect assumptions. First, beneficiaries under Parts A and B are not similarly situated. The programs have different eligibility requirements and different types of coverage. Some persons, such as plaintiff Ann Doe, participate in both programs. Second, intermediate scrutiny is inappropriate here. Although medical care is involved, the challenged discrimination is not between those receiving and those being denied medical care, or between those who can and those who cannot afford medical care, but rather between those covered for institutional care (Part A) and those covered for professional services (Part B). Instead, the rational basis test is applicable here. Plaintiffs have implicitly and correctly conceded that the differences between Part A and Part B hearing procedures are rationally based and free from invidious discrimination. *Cf. Gray Panthers, supra,* 466 F.Supp. at 1326; *Drs. Russi, Griffin & Snell, Ltd. v. Matthews,* 438 F.Supp. 1036, 1042–1044 (E.D.Va.1977).

### IV

The Court concludes that the Part B hearing procedures violate plaintiffs' due process rights insofar as the final, unappealable decision regarding claims disputes is made by carrier appointees whose impartiality is subject to doubt. However, the Part B hearing procedures do not violate plaintiffs' due process rights with respect to the evidentiary standards employed. Neither do the Part B procedures violate plaintiffs' equal protection rights when compared to procedures available to Part A claimants. Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is GRANTED with respect to the partiality and unappealability issues and DENIED with respect to the evidentiary standards and equal protection issues.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED with respect to the partiality and unappealability issues and GRANTED with respect to the evidentiary standards and equal protection issues.

Plaintiffs shall prepare a form of judgment declaring that Part B beneficiaries are entitled to have a final determination of their claims made by a hearing officer independent of the carrier.